IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRED OVCHINNIKOV,

    Plaintiff,

v.

CONTECH CONSTRUCTION
PRODUCTS, INC.

    Defendant.

CV 07-1482-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    This action was filed by plaintiff Fred Ovchinnikov in Multnomah County Circuit Court on August 29, 2007, and removed to this court on October 4, 2007, by defendant Contech Construction Products, Inc. ("Contech"). Ovchinnikov's complaint, as amended effective December 4, 2007, states disability discrimination and related claims against Contech arising under the Americans with Disabilities Act, O.R.S. 654.062(5), 659A.030(1)(f), 659A.040,

Page 1 - FINDINGS AND RECOMMENDATION

659A.100 *et seq.*, and 659A.109, as well as Oregon common law prohibiting wrongful discharge. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

Ovchinnikov's counsel reported this matter settled on July 18, 2008, following which the court ordered "that this action is Dismissed with prejudice and without costs and with leave, upon good cause shown within sixty (60) days, to have this order of dismissal set aside and the action reinstated if the settlement is not consummated." Now before the court is Ovchinnikov's motion (#23) to set aside the court's order of dismissal and to reinstate this action. Ovchinnikov asserts that good cause for reinstatement exists, in that he has not entered into an enforceable and binding agreement to settle this action. I have considered Ovchinnikov's motion, all of the pleadings on file, and oral argument on behalf of the parties. For the reasons that follow, Ovchinnikov's motion should be denied.

## LEGAL STANDARD

This court may set aside the order of dismissal and reinstate Ovchinnikov's action "on good cause shown." (Docket No. 22.) The parties' failure to consummate an enforceable settlement agreement would constitute good cause to set aside the order of dismissal.

## FACTUAL BACKGROUND

Ovchinnikov and Contech discussed the possibility of settling this action throughout its pendency, their discussions intensifying in late June and early July 2008, as the July 11, 2008, dispositive motion deadline approached. In light of these discussions, on July 8, 2008, Contech filed an unopposed motion to extend the dispositive motion deadline to July 18, 2008. The motion was granted that same day.

On July 16, 2008, counsel for Ovchinnikov contacted counsel for Contech by telephone

Page 2 - FINDINGS AND RECOMMENDATION

and indicated that his client was willing to accept Contech's most recent settlement offer, in the amount of $15,000. Less than two hours later, defense counsel emailed counsel for Ovchinnikov as follows:

> This will confirm that Contech will agree to settlement on the following essential terms:
>
> - Contech will pay $15,000 (fifteen thousand dollars) in full settlement of this case.
>
> - The settlement will be made in two checks, one to your offices for $5,000 and one to Mr. Ovchinnikov for $10,000. The payment to Mr. Ovchinnikov shall be subject to withholdings.
>
> - Ovchinnikov will sign a full release of all claims against Contech and its agents.
>
> - Ovchinnikov will agree to strict confidentiality regarding the settlement and will take steps to ensure that his spouse maintains the confidentiality of the settlement.
>
> - Ovchinnikov will cooperate in promptly dismissing the litigation that is pending with prejudice and without fees or costs to either party.
>
> Please confirm that plaintiff agrees to these terms and I will get started on preparing a form of settlement agreement today and will try to get that to you no later than tomorrow so we can facilitate a prompt finalization and payment.

Later that day, Ovchinnikov's counsel emailed counsel for Contech indicating that his client would prefer that only $1,000 of the settlement amount be designated as wages (and therefore subject to withholdings). Contech's counsel responded by email that same day, indicating that the proposed modification "might well be okay" and that he would respond later with confirmation.

Two days later, on July 18, 2008, counsel for Contech emailed counsel for Ovchinnikov as follows:

Page 3 - FINDINGS AND RECOMMENDATION

> Attached is a form of settlement agreement. As you'll see, it includes just $1000 as wages and the balance of the payment to plaintiff ($9000) as emotional distress. Please let me know if this form is acceptable to you. I'll also call the court if you don't object and advise them that we've settled and will be filing dismissal paperwork shortly.

A proposed settlement agreement incorporating all of the material terms discussed on July 16, 2008, including the modification proposed by Ovchinnikov's counsel, was attached.

That same day, counsel for Ovchinnikov responded by email stating, "The agreement looks good." Ovchinnikov's counsel then advised the court's courtroom deputy by telephone that the action had been settled. Counsel for Ovchinnikov followed up with an email message stating, "As I told you in our phone call, pursuant to LR 41.1, this case has been resolved." This court issued an order of dismissal dated July 18, 2008, stating as follows:

> The Court having been informed by counsel for the parties that this action has been settled, it is Ordered that this action is Dismissed with prejudice and without costs and with leave, upon good cause shown within sixty (60) days, to have this order of dismissal set aside and the action reinstated if the settlement is not consummated. Pending motions, if any, are Denied as Moot.

On August 6, 2008, having heard nothing from Ovchinnikov in the interim, counsel for Contech called Ovchinnikov's counsel to inquire as to the status of the settlement agreement. Counsel indicated that his client had the agreement, but had not yet signed it, and stated that he would contact defense counsel in the event there were any difficulties in obtaining Ovchinnikov's cooperation. Two weeks later, on August 21, 2008, in a telephone call initiated by Contech's counsel, counsel for Ovchinnikov indicated that his client had balked at signing the agreement. Both orally during that telephone call and in writing on the following day, August 22, 2008, counsel for Contech indicated his belief that the parties had already entered into an enforceable settlement agreement, regardless of Ovchinnikov's failure to sign the settlement agreement

Page 4 - FINDINGS AND RECOMMENDATION

document.

On September 12, 2008, the 56th day following entry of the dismissal order, Ovchinnikov moved to set aside the order and reinstate this action.

## ANALYSIS

Neither party expressly addresses the question of choice of law. The federal courts apply state law, rather than federal common law, to questions of contract formation. *See*, *e.g.*, *Collins v. Thompson*, 679 F.2d 168, 171 (9th Cir. 1982) (applying the law of the state in which the contract was allegedly formed to question of contract formation), *citing Irving Trust Co. v. Day*, 314 U.S. 556, 561 (1942); *see also*, *e.g.*, *Investment Service Co. v. Roper*, 588 F.2d 764, 768 n. 3 (9th Cir. 1978). Oregon law therefore controls the question whether the parties' email communications created a binding and enforceable agreement to settle this lawsuit.

In 1960, the Oregon Supreme Court opined as follows:

> Where parties agree to reduce their agreement to writing, the question arises as to whether their negotiations constitute a contract. This question usually depends upon their intention, or, as it is sometimes expressed, upon whether they intend the writing to be a condition precedent to the taking effect of the agreement. If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. **Where the terms of a contract have in all respects been definitely understood and agreed upon, the failure subsequently to embody such terms in a written contract, as agreed, does not prevent the contract, where no statutory objection interposes, from being obligatory upon the parties.** In other words, where all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed. Where, however, the writing is regarded as a prerequisite to the closing of the contract, the agreement does not become binding if there has been a failure to reduce it to

Page 5 - FINDINGS AND RECOMMENDATION

> writing. Where it is clearly understood that the terms of a proposed contract, though tentatively agreed on, are to be reduced to writing and signed before it is complete and binding on the parties, there is no final contract until that is done.

*Gen. Realty Corp. v. Douglas Lowell, Inc.*, 223 Or. 244, 253-254 (1960) (emphasis supplied), *quoting* 12 Am. Jur. 522, Contracts § 25, *and citing* 1 Restatement, p 33, Contracts § 26, *and citing* 122 A.L.R. 1217 *et seq.* The *Gen. Realty* court, having found that the parties before it intended their written contracts as mere memorials of previously negotiated oral agreements, held that the parties had entered an enforceable contract despite the absence of any written document recording its existence.

Eleven years later, in 1971, the Oregon Supreme Court returned to this same issue in the settlement negotiation context. *See Britt v. Thorsen*, 258 Or. 135 (1971). Relying upon the principles articulated in *Gen. Realty*, *see Britt*, 258 Or. at 137-138, the *Britt* court determined on the facts before it – in which the negotiating parties lacked authority to bind third parties to a settlement agreement, the consent of all parties was required for an effective settlement agreement to be reached, and the parties testified that they had always intended a signed writing to function as a prerequisite to an effective, final agreement – that in the absence of a writing no enforceable settlement agreement had been reached.

In 1995, the Oregon Court of Appeals again applied the principles articulated in *Gen. Realty* to settlement negotiations. *See Kaiser Found. Health Plan v. Doe*, 136 Or. App. 566 (1995). After noting that "[t]he objective manifestations of the parties as evidenced by their communications and acts control the resolution of th[e contract formation] issue," *id.* at 572, *citing Real Estate Loan Fund v. Hevner*, 76 Or. App. 349, 354 (1985), the *Kaiser* court found that the parties had reached an enforceable settlement agreement when defendant's counsel orally

Page 6 - FINDINGS AND RECOMMENDATION

communicated his client's consent to settlement and advised the parties' mediator that settlement had been reached, despite defendant's subsequent refusal to sign a formal settlement agreement prepared by plaintiff's counsel, *see id.*

The *Kaiser* court considered evidence of the parties' settlement negotiations both during and following mediation, and found it telling that the defendant had authorized her counsel to accept the plaintiff's last offer and that her counsel had communicated her assent to the agreement and notified the parties' mediator that the case was settled. The court accepted the assertion of plaintiff's attorney that "the purpose of having the attorneys sign the written memorandum was to meet any Statute of Frauds requirements," *id.* at 572, but found that "[d]efendant's argument that her intent was not to be bound until she had signed a written settlement agreement [wa]s not supported by the evidence" in that "[h]er actions objectively manifested an intent to be bound" immediately, *id.*

The *Kaiser* court next considered whether the defendant's counsel had authority to enter into a final, binding settlement before defendant signed a formal settlement agreement. The court found, under the circumstances, that defendant's counsel had both actual and apparent authority to enter into a binding settlement agreement on his client's behalf. Citing Oregon case law establishing that "[a]pparent authority is created by conduct of the principal, which when reasonably interpreted causes a third party to believe that the principal has authorized the agent to act on the principal's behalf in the matter," *id.* at 573, *citing Jones v. Nunley*, 274 Or. 591, 595, (1976), the court found apparent authority from the following facts:

> defendant permitted [her counsel] to do all the negotiating regarding the case on her behalf, and in turn, he kept her apprised of his negotiations and made counteroffers on her behalf. The offer itself was conveyed to defendant through [her counsel], and defendant's and [her counsel]'s conduct indicated that an

Page 7 - FINDINGS AND RECOMMENDATION

>       acceptance or rejection would be conveyed to plaintiff through [defendant's counsel], which in fact happened. When [defendant's counsel] accepted the settlement, plaintiff had no reason to believe that he was not authorized to accept all of the terms.

*Id.*

The *Kaiser* court also addressed whether the parties could have had an effective "meeting of the minds" if one of the parties, specifically the defendant, was unaware of one or more of the material terms of the agreement at the time she instructed her counsel to accept the settlement offer on her behalf. The court determined that her counsel's knowledge of the terms of the agreement was sufficient to create a binding agreement. *See id.* at 574.

The court also considered whether the agreement was enforceable under Oregon's Statute of Frauds, codified at O.R.S. 41.580, and concluded in the affirmative, despite confidentiality and forbearance provisions that in all likelihood would take longer than one year to perform to "completion," because in the event the defendant were to die within a year of contract formation, even these open-ended provisions would be capable of completion within one year. *See id.* at 578, *quoting Duniway v. Wiley*, 85 Or. 86, 89 (1917) ("In general, a verbal stipulation to render some particular service which fixes no definite or contingent time for its performance, but which is capable of performance within one year after the same is made, is not controlled by the statute, although the act probably will not be, and was not expected to be fulfilled within that time").

The Oregon Court of Appeals recently addressed these issues in the settlement negotiation context once again in *Baldwin & Baldwin*, 215 Or. App. 203 (2007). Counsel for one of the *Baldwin* parties, Diane, had emailed a final settlement proposal to counsel for the other party, Karen. Karen's attorney responded that the proposal was "acceptable" and that a formal acceptance would follow. Approximately two weeks later, Karen's attorney confirmed that the

Page 8 - FINDINGS AND RECOMMENDATION

parties had agreed to settle the action, but noted that certain amendments would be required. Counsel asserted that "assuming that the rest of the deal is consummated, we will agree to dismiss the appeal." *See Baldwin*, 215 Or. App. at 206. The parties subsequently failed to agree as to the contemplated amendments, and Karen ultimately refused to sign the settlement agreement.

> The *Baldwin* court observed that:
>
> The initial issue is whether the parties agreed to a final settlement of this matter. A settlement is a contract. *Hughes v. Misar*, 189 Ore. App. 258, 264, 76 P.3d 111 (2003). Whether a contract exists is a question of law. *Dalton v. Robert Jahn Corp.*, 209 Ore. App. 120, 132, 146 P.3d 399, *rev den*, 342 Ore. 416, 154 P.3d 722 (2007). As often stated, Oregon subscribes to an objective theory of contracts, which means that whether the parties entered into a contract does not depend on the parties having the same subjective understanding of the agreement. Rather, it depends on whether the parties agreed to the same express terms of the contract. *Newton/Boldt v. Newton*, 192 Ore. App. 386, 392, 86 P.3d 49, *rev den*, 337 Ore. 84, 93 P.3d 72 (2004).

*Id.* at 207. "On these facts," the court concluded, "we have no difficulty concluding that the parties agreed to settle this matter." *Id.* The court explained:

> The . . . exchange of e-mails between the parties' attorneys constituted the making of a contract. Diane's attorney's letter . . . to Karen's attorney was an offer, and Karen's attorney's response was an acceptance of that offer. Karen's attorney even wrote that a more formal "acceptance" would follow, and Karen's attorney's [subsequent] letter was that formal acceptance. The exchange of e-mails between the attorneys for the parties demonstrated the requisite agreement on the same essential terms of the settlement.

*Id.* The court further clarified that one party's refusal to sign the written settlement agreement was "not dispositive" because "when parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the immediately binding nature of the agreement." *Id.* at 207-208 (internal modifications omitted), *quoting Hughes v. Misar*, 189

Page 9 - FINDINGS AND RECOMMENDATION

Or. App. 258, 264 (2003).

Here, Ovchinnikov's sole argument in support of his assertion that the parties never reached an enforceable agreement to settle this action is that there was no "meeting of the minds" as to the scope of the agreement's release-of-claims provision. Specifically, Ovchinnikov declares that he did not understand that the release language his counsel agreed to on his behalf – "Ovchinnikov will sign a full release of all claims against Contech and its agents" – meant that he would be required to waive his right to pursue claims under §§ 503 and 504 of the Vocational Rehabilitation Act, the Americans with Disabilities Act, O.R.S. Chapter 654, and O.R.S. 659A.100 *et seq.* In the absence of agreement on this term, Ovchinnikov argues, the parties' settlement agreement cannot be enforced against him, and this action may properly be reinstated.

Ovchinnikov's argument is unpersuasive. His agreement to "sign a full release of all claims against Contech and its agents" unambiguously and necessarily encompassed *all* claims regardless of which statutory scheme they arose under. Moreover, at oral argument Ovchinnikov did not deny that he lacks any conceivable claim arising under the Vocational Rehabilitation Act, or that the claims pled in his amended complaint expressly arise under the Americans with Disabilities Act, O.R.S. Chapter 654, and O.R.S. Chapter 659A. Under any reasonable interpretation of the agreement to release "all" claims, therefore, release of Ovchinnikov's claims under each of the latter statutes was clearly intended.

As noted above, "Oregon subscribes to an objective theory of contracts, which means that whether the parties entered into a contract does not depend on the parties having the same subjective understanding of the agreement. Rather, it depends on whether the parties agreed to the same express terms of the contract." *Baldwin*, 215 Or. App. at 207, *citing Newton/Boldt v.*

Page 10 - FINDINGS AND RECOMMENDATION

*Newton*, 192 Or. App. 386, 392 (2004). The parties agreed to all of the material terms of a settlement agreement, including a term by which Ovchinnikov unambiguously agreed to release all claims he had against Contech and its agents, thereby creating an enforceable contract, notwithstanding the parties' expectation that a formal, written agreement would be entered into and signed as a record of their agreement. The record is devoid of evidence that any party considered a formal, written contract to be a prerequisite for the agreement to become effective, and the "objective manifestations of the parties as evidenced by their communications and acts," including in particular those of Ovchinnikov and his counsel, suggest that both parties considered themselves to have entered into a binding agreement.

Because the parties have entered into an enforceable settlement agreement, Ovchinnikov has not met his burden of establishing good cause for reinstating this action. The motion should therefore be denied.

## CONCLUSION

For the reasons set forth above, I recommend that Ovchinnikov's motion (#23) be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 4, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections

/ / /

/ / /

/ / /

Page 11 - FINDINGS AND RECOMMENDATION

are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 21st day of October, 2008.

    /s/  Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 12 - FINDINGS AND RECOMMENDATION